USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/3/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                          :
UNITED STATES OF AMERICA,                                 :        S3 09 Cr. 581 (WHP)
                                                          :
            - against -                                   :        MEMORANDUM & ORDER
                                                          :
PAUL M. DAUGERDAS, et al.,                                :
                                                          :
                        Defendants.                       :
                                                          :
-------------------------------------------------------------X

WILLIAM H. PAULEY III, United States District Judge:

            The Government moves to disqualify the law firm of Sonnenschein, Nath &

Rosenthal LLP ("Sonnenschein") from representing Defendant Denis Field ("Field") based on

Sonnenschein's simultaneous representation of cooperating witness Adrian Dicker ("Dicker").

For the following reasons, the Government's motion is granted.


                                        BACKGROUND

            In the Third Superseding Indictment (the "Indictment"), Field is charged with

participating in a tax fraud conspiracy from 1994 to 2005.  Field is the former Chairman of BDO

Seidman LLP ("BDO"), an accounting firm at the center of the alleged conspiracy.  Dicker is a

former BDO partner and close associate of Field who allegedly participated in the fraud.  Dicker

also served on BDO's Board of Directors from early 1999 until October 2003.  Dicker was

indicted and pled guilty in a separate proceeding.  The Government plans to call Dicker to testify

against Field at trial before this Court.

            Dicker is represented by Todd Welty ("Welty"), a partner in Sonnenschein's

Dallas office.  Notwithstanding this representation, in 2010, Mark Flessner ("Flessner"), a

1

Sonnenschein partner in the Chicago office, agreed to represent Field pursuant to a "limited representation agreement." Specifically, Flessner represents Field for "the limited purpose of investigating and preparing [Field's] motion to determine whether the government has interfered with Mr. Field's right to counsel by causing BDO to cease paying Mr. Field's attorneys' fees." (Letter Memorandum from Mark Flessner dated July 29, 2010 ("Flessner Letter") at 1.) Field has requested permission to conduct discovery on the interference-with-counsel issue. If his application is granted, Sonnenschein's Chicago office intends to serve discovery requests, take depositions, and review responsive documents. To alleviate conflict of interest concerns, Sonnenschein has erected an ethical wall between the attorneys in its Dallas and Chicago offices "such that there is no sharing of client confidences, non-public documents, privileged information or attorney work-product." (Flessner Letter at 1.)

The Government argues that Sonnenschein's simultaneous representation of Field and Dicker presents a non-waivable conflict of interest or, alternatively, requires that Dicker waive his right to conflict-free counsel. Dicker has refused to waive any actual or potential conflict.

<u>DISCUSSION</u>

"The right of a defendant in a criminal case to counsel of his choice is one of constitutional dimension, but it is not absolute." United States v. Fisher, 563 F. Supp. 1369, 1370 (S.D.N.Y. 1983); accord United States v. Arrington, 867 F.2d 122, 128 (2d Cir. 1989). While the Sixth Amendment guarantees a defendant's right to counsel, its "essential aim" is to provide "an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486

2

U.S. 153, 159 (1988); accord United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) ("The Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing.").

While there is a "presumption in favor of the accused's chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119. "An actual conflict of interest exists when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client. An attorney has a potential conflict of interest if the interests of the defendant could place the attorney under inconsistent duties in the future." Jones, 381 F.3d at 119 (quotations and internal citations omitted). The Court of Appeals "has made clear that 'an attorney's conflicts are ordinarily imputed to his firm based on the presumption that associated attorneys share client confidences.'" United States v. Stein, 410 F. Supp. 2d 316, 325 (S.D.N.Y. 2006) (quoting Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005)). The firm "seeking to avoid imputation . . . bears the burden of demonstrating the adequacy of the safeguards it implemented." Stein, 410 F. Supp. 2d at 326.

If a conflict of interest exists, the decision to waive the conflict "must generally be left to the defendant and not be dictated by the government." United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003). Nevertheless, a court "retain[s] discretion to reject a defendant's knowing and intelligent waiver when his attorney's conflict jeopardizes the integrity of judicial proceedings," Perez, 325 F.3d at 125, or "the government's interest in ensuring a fair trial and a just verdict." Jones, 381 F.3d at 119; see also United States v. Reynoso, 6 F. Supp. 2d 269, 270 (S.D.N.Y. 1998) ("The solution to th[e] clash between a defendant's Sixth Amendment right to

counsel and [a] defendant's right to a fair trial is a balancing of interests that is committed to the

discretion of the trial judge . . . ." (internal quotations omitted)).  In determining whether to

disqualify a defendant's chosen counsel, courts examine:

> (1) whether [disqualification] would create real prejudice to the defendant based on the length of the representation and/or counsel's familiarity with the case, (2) whether . . . the attorney could be called as a witness at the defendant's trial or implicated in the defendant's alleged crimes, (3) whether the continued representation would conflict with the attorney's own personal financial or liberty interests, as opposed to the interests of a . . . client, (4) whether . . . the attorney's relationship with the other client is continuing or has been terminated, (5) whether . . . [the] client affected by the conflict has initiated or joined in the motion to disqualify . . . , and (6) the availability of measures that might limit the dangers posed by the conflict . . . .

Stein, 410 F. Supp. 2d at 328 (quotations and internal citations omitted).

This case presents the unusual circumstance of a law firm seeking to

simultaneously represent a defendant and a cooperating witness in the same criminal proceeding.

This undertaking creates a clear conflict of interest.  See United States v. Jiang, 140 F.3d 124,

127 (2d Cir. 1998) (per curiam) ("A showing that two attorneys are partners . . . whose interests

overlap in the acceptance of clients and in the sharing of fees is sufficient to ground a conflict of

interest claim, assuming that there is proof that the clients' interests may have been in conflict."

(quotations omitted)); Anwar v. United States, 648 F. Supp. 820, 826 (N.D.N.Y. 1986)

("Whenever a defense attorney has previously represented an important government witness who

testifies against his client, the possibility of a conflict of interest exists."); see also GSI

Commerce Solutions, Inc. v. BabyCenter, L.L.C., --- F.3d ----, 2010 WL 3239436, at *5 (2d Cir.

Aug. 18, 2010) (in the civil context, simultaneous representation of two clients with directly

adverse interests is "prima facie improper," a standard which imposes "a burden so heavy that it

will rarely be met").

4

As an initial matter, this Court rejects Sonnenschein's contention that there is no factual overlap between its representations of Field and Dicker. While Dicker resigned from BDO's Board of Directors in October 2003, his tenure was proximate to the Board's decision in February 2004 to stop paying Field's legal fees. As a former Board member and close associate of Field, it is conceivable that Dicker possesses discoverable information concerning the Board's decision. If Flessner—who is obligated to investigate these events zealously—serves discovery requests on Dicker or seeks to depose him, Flessner and his partner Welty will become adversaries. That would be a wholly untenable situation. See Jones, 381 F.3d at119 ("An attorney has a potential conflict of interest if the interests of the defendant could place the attorney under inconsistent duties in the future."). Indeed, while the contours of this relationship are difficult to draw, unseemly scenarios abound: Welty defending a deposition taken by Flessner, or the two of them negotiating on behalf of their clients over the scope of disclosure.

Even putting aside this potential conflict of interest, Welty faces an actual conflict of interest on this very motion. One consideration on a motion to disqualify is whether the first-represented client has joined the motion. See United States v. James, 708 F.2d 40, 46 (2d Cir. 1983) ("To the extent that . . . the client . . . does not join in the motion to disqualify . . . , the interest of the government in disqualifying the attorney is normally quite weak."). Here, Welty is responsible for advising Dicker about, inter alia, whether to join the Government's motion to disqualify Sonnenschein. Yet joining that motion places Welty in the position of opposing his own partner and firm. Not only do Welty's and Dicker's "interests diverge with respect to [this] material . . . course of action," Jones, 381 F.3d at 119, but this conflict exemplifies the tension inherent in the simultaneous representation of a cooperating witness and a defendant with adverse interests.

5

Given the existence of these serious conflicts of interest, this Court must balance

the competing interests of those involved.  See Reynoso, 6 F. Supp. 2d at 270 (disqualification

requires "a balancing of interests").  Importantly, Dicker has refused to waive the conflict created

by Sonnenschein's representation of Field.  See United States v. Uzzi, 549 F. Supp. 979, 984

(S.D.N.Y. 1982) (disqualifying a law firm employing former Assistant United States Attorney

where the government refused to waive the potential conflict); see also GSI Commerce, 2010

WL 3239436, at *8, *10 (upholding the disqualification of a law firm that failed to obtain

consent from the first-represented client).  While Dicker's reasons are protected by attorney-

client privilege, his refusal to waive any conflict suggests a level of discomfort with

Sonnenschein's dual representation.  Colloquy at the July 15, 2010 hearing is instructive:

> The Court:  How can you represent someone in any capacity
> knowing that your law firm represents someone else involved in
> the case who is going to testify against your client?
>
> Mr. Flessner:  I agree with you that on the face, if one does the
> analysis superficially, that superficially is a problem. . . . [I]t is a
> much more conflicted and nuanced problem which we have
> analyzed from various angles. . . .  We have determined that that
> particular issue does not conflict with the representation of Mr.
> Dicker.
>
> . . . .
>
> The Court: . . . Mr. Welty.  Has your client Mr. Dicker waived [any
> conflict of interest]?
>
> Mr. Welty:  No, your Honor.
>
> The Court:  I don't understand, gentlemen, why you want to enter
> . . . this minefield.  The Court's obligation extends not just to Mr.
> Field but to ensure that other proceedings, including a proceeding
> before my colleague Judge McMahon, is not in some way
> impaired.  Why is Mr. Dicker not waiving the conflict?

> Mr. Welty: Your Honor, quite frankly, without getting into my
> specific advice to Mr. Dicker, the decision was made that he is a
> cooperating witness and it is not prudent for him to waive any
> conflict. . . .

(Transcript of Hearing dated July 15, 2010 at 8-10.)  This colloquy reveals the perilous path

Sonnenschein lawyers are trying to navigate.  Moreover, this Court must fulfill its duty to protect

Dicker's interests as a cooperating witness and his right to conflict-free counsel.  See United

States v. Falzone, 766 F. Supp. 1265, 1272 (W.D.N.Y. 1991) (considering the interests of a

potential trial witness).  Sonnenschein's representation of Field intrudes on those interests.

   Nor will disqualification of Sonnenschein unduly burden Field.  Flessner only

recently began representing Field in connection with the discrete interference-with-counsel issue.

If Flessner is disqualified, Field will not be deprived of his primary trial counsel, Kostelanetz &

Fink LLP.  Further, while Field's interference-with-counsel argument may involve complex legal

questions, many law firms other than Sonnenschein possess the expertise required to advocate on

Field's behalf.  See United States v. Hasarafally, 529 F.3d 125, 128 (2d Cir. 2008) ("[T]he

burden on the government and the public of [disqualifying the entire Department of Justice] is

much higher than the burden on a private party, who can easily choose from a range of law

firms.").  The notion that adequate representation can be provided only by a firm representing an

adverse witness is outlandish.

   While there are similarities between this case and United States v. Stein, there are

also stark contrasts.  In Stein, the law firm facing disqualification did not seek to represent a

cooperating witness and a defendant simultaneously; rather, the firm terminated its relationship

with the witness several months prior to being retained by the defendant.  410 F. Supp. at 319.

Further, because that firm had represented the defendant for two years as his primary trial

counsel, the court found that "disqualification would [have] result[ed] in real prejudice."  Stein,

410 F. Supp. at 328. Specifically, the court concluded disqualification would have made it difficult for the defendant to find a qualified attorney in time to prepare for trial, deprived him of the "benefit of two years of preparation," and cost him "nearly $1 million in attorney's fees." Stein, 410 F. Supp. at 328-29. No such dangers are present here. Sonnenschein only recently began representing Field in connection with a discrete issue—the interference with his right to counsel—a question unrelated to the substantive charges in the Indictment.

While this Court does not question the ethical wall constructed by Sonnenschein between its Dallas and Chicago offices, see Uzzi, 549 F. Supp. at 985 ("For disqualification to turn on questions such as the Court's perception of the integrity of the individuals involved or the Defendant's motive in engaging counsel, obvious difficulties would be presented."), the simultaneous representation of a defendant and a cooperating witness undermines the integrity of these proceedings. Sonnenschein does not identify a single case in which a court permitted a law firm to simultaneously represent a defendant and a cooperating witness with adverse interests in the same criminal proceeding. The explanation for this seems clear: most firms do not entertain this type of concurrent representation.

8

CONCLUSION

For the foregoing reasons, the Government's motion to disqualify the law firm of

Sonnenschein, Nath & Rosenthal LLP from representing Denis Field is granted.

Dated: September 3, 2010
       New York, New York


SO ORDERED:


_____
WILLIAM H. PAULEY III
U.S.D.J.


*All Counsel of Record*

       and

Mark A. Flessner, Esq.
Sonnenschein, Nath & Rosenthal LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606
*Counsel for Denis Field*

Todd Welty, Esq.
Sonnenschein, Nath & Rosenthal LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX  75201
*Counsel for Adrian Dicker*

Glenn C. Colton, Esq.
Sonnenschein, Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020