KOSTELANETZ & FINK, LLP

7 WORLD TRADE CENTER

NEW YORK, NEW YORK 10007

—

TEL: (212) 808-8100

FAX: (212) 808-8108

www.kflaw.com

October 6, 2013

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: *U.S. v. Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

Dear Judge Pauley:

We write on behalf of Denis Field to inform the Court of Jencks Act violations committed by the government in this case.  As set forth in detail below, the government has deliberately withheld prior statements of its witnesses that are crucial to Mr. Field's defense, specifically the 2011 deposition transcripts of Scott Univer and Fred Goldberg.  As a result of these deliberate Jencks Act violations, we submit that this Court must, at a minimum, preclude the government from calling either witness at this trial.

A. <u>Facts</u>

Before the re-trial of this matter, the government agreed to provide to the defendants its witness list by July 2, 2013, and all Jencks Act material pertaining to those witnesses by July 26, 2013.  That agreement was placed on the record at a pre-trial conference held on February 1, 2013. See February 1, 2013, Transcript at 4 (Attached hereto as Exhibit A).

The Jencks Act material provided by the government for witnesses Scott Univer and Fred Goldberg, both of whom testified at the first trial of this matter, ***did not*** contain either a February 2010 declaration of Scott Univer, which was filed before the first trial of this matter, or deposition transcripts of Messrs. Univer and Goldberg, which depositions were taken in the summer and fall of 2011.  The declaration and depositions were given in a civil matter filed by DLA Piper (hereinafter "DLA") on behalf of BDO on December 30, 2009, in the Superior Court for the District of Columbia captioned *BDO v. Morgan Lewis & Bockius*, Civil Action No. 9640-09M.  In that lawsuit, BDO claims that Morgan Lewis & Bockius (hereinafter "Morgan Lewis")

Hon. William H. Pauley III
October 6, 2013
Re: *U.S.* v. *Daugerdas, et al.*, S6 09 Cr. 581 (WHP)

committed malpractice because, among other things, it advised BDO concerning the severance agreements of Mr. Field and others in October 2003 but failed to inform BDO's management that it had previously advised Mr. Field, Charles Bee and Adrian Dicker – two of the government's cooperating witnesses -- in 2000 concerning potential civil and criminal liability arising from BDO's Tax Solutions Group's business. The issues in that lawsuit, then, are very relevant to this criminal case.

It is important to note that DLA has served as outside counsel for BDO since late 2003. Scott Univer testified in the first trial that when he left BDO in June 2003, he became a partner at DLA. Upon his return to BDO as General Counsel in December 2003, after Mr. Field was removed as CEO, Mr. Univer began to use DLA as regular outside counsel. (April 4, 2011 Trial Tr. at 4137, 4257). DLA has represented BDO throughout the time of the government's investigation of this matter; DLA represented BDO in litigation against Mr. Field concerning payment of his attorneys' fees; and DLA counseled BDO in connection with the Deferred Prosecution Agreement entered into with the Southern District of New York in June of 2012. That agreement, which is attached hereto as Exhibit B, is addressed to and signed by both Ellis Reemer, Esq. and Diana Erbsen, Esq. of DLA. Under the terms of the Deferred Prosecution Agreement, BDO is required to provide continuing cooperation to the U.S. Attorney's Office by, among other things, "Volunteering and providing to the [U.S. Attorney's] Office any information and documents that come to BDO's attention that may be relevant to the Office's investigation." (Exhibit B at 4, ¶7(b)). A DLA attorney was present at each of the depositions of Messrs. Goldberg and Univer.

As we previously advised the Court in our letter dated September 19, 2013, regarding the subpoenas issued to Charles Bee and his attorney, Mr. Field issued a trial subpoena to Scott Univer and his attorney on August 20, 2013, seeking any sworn statements or testimony of Mr. Univer pertaining to the issues in this case. In a subsequent telephone conversation regarding the trial subpoenas, counsel for Mr. Univer indicated that he assumed we had been provided Mr. Univer's deposition testimony by the government. When we advised him that we had previously been unaware of that testimony, Mr. Univer's counsel produced not only the deposition transcript but also a 2010 declaration signed by Mr. Univer in the civil matter, which had been provided by Mr. Univer's counsel to the government in February 2011. (September 6, 2013 letter of Michael L. Spafford, Esq. attached as Exhibit C).

- In his deposition, which took place on September 19, 2011, Mr. Univer was asked about the very same issues he testified to in the last trial and about which he is expected to testify in this trial, specifically the retention by BDO of Skadden, Arps, Slate, Meagher & Flom LLP (hereinafter "Skadden") to review BDO's Tax Solutions Group's practices and procedures. The Skadden report is the subject of Overt Act "t" in the current indictment. Mr. Univer was General Counsel of BDO and served as such both before Mr. Field became CEO of BDO and while

Hon. William H. Pauley III
October 6, 2013
Re: *U.S. v. Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

Mr. Field was CEO.   It was Mr. Univer who suggested that Skadden Arps
conduct a review of the Tax Solutions Group's processes and procedures, and it
was Mr. Univer who communicated with Skadden about BDO's suggested
changes to the report.   Mr. Univer was questioned during his September 2011
deposition about those very facts.   At his deposition, Mr. Univer testified that an
attorney from DLA was present during his preparation.

- Mr. Univer's declaration, which was signed on February 18, 2010, and filed in
connection with his motion to disqualify Gibson Dunn & Crutcher from appearing
in the civil action on behalf of Morgan Lewis, was attached to an e-mail dated
*February 28, 2011* to AUSA Davis from Elizabeth Martin, an attorney at
Bingham McCutchen, LLP, the firm currently representing Mr. Univer.   (Exhibit
D). [1]   Not only did the government fail to produce Mr. Univer's February 18,
2010 declaration as 3500 material in this case, but it also failed to provide the
declaration before his April 4, 2011, testimony in the first trial.

At the beginning of the afternoon session of this trial on September 18, 2013, we raised
with the Court our concerns that the government's view of its Jencks Act obligations was
narrower than the parties previously understood.   We explained at that time that we had had to
obtain, by subpoena, testimony given in 2005 by Robert Greisman, another government witness,
in connection with his divorce proceedings, during which he testified about the tax shelters he
entered into.   We also informed the Court at that time that we had stumbled upon Mr. Univer's
deposition testimony in a conversation with his attorney after we issued the trial subpoena to
him.   In response, Assistant United States Attorney Nanette Davis stated, "[T]here have been no
3500 violations.  *We are not in possession of those documents.*"   (Tr. at 1218) (emphasis added).
Ms. Davis then went on to say, "*We have no obligation to go out and seek our defendants'
statements.*  It may be a wise course, but we don't do that, and it is not in our possession."  Id.
(emphasis added).   Ms. Davis repeated this again at the end of the trial day, and the Court
responded, "I must say, Ms. Davis, that I do think at some point it is incumbent on the
government to ask its witnesses whether they have given testimony on the very subjects about

---

[1]      Mr. Univer sought Gibson Dunn's disqualification because that firm had previously
represented Mr. Univer in connection with the Department of Justice's criminal investigation of
Denis Field, Charles Bee and Adrian Dicker and BDO's sale of tax shelters as well as his
testimony in the federal grand jury that resulted in the criminal charges against Mr. Field.  In his
declaration in support of his motion to disqualify Gibson Dunn & Crutcher, Mr. Univer noted
that "[t]he DOJ investigation and the grand jury investigation concerned factual matters that are
centrally involved in the [civil] suit by BDO against Morgan Lewis."  (Exh. D) (Declaration of
Scott Univer dated February 18, 2010 at ¶ 7).

Hon. William H. Pauley III
October 6, 2013
Re:  *U.S.* v. *Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

which the government intends to adduce proof at this trial in some other proceeding." (Tr. 1356).[2] (Relevant portions of Transcript from 9/18/13 attached hereto as Exhibit E).

On September 19, 2013, I sent an e-mail to Diana Erbsen, Esq. at DLA, and asked her whether any of the other BDO-related government witnesses testified in the *BDO v. Morgan Lewis* matter.  That evening, Ms. Erbsen responded, "Just Goldberg apparently.  Am checking on what we have."  (9/19/13 e-mail exchange attached as Exhibit G).  We then issued a trial subpoena to BDO asking for a list of all witnesses who provided testimony and sworn statements in the civil matter.  In a letter dated September 25, 2013, Ms. Erbsen, on behalf of BDO, provided us with the list; AUSA Davis was copied on that letter.   (Erbsen letter and witness list attached hereto as Exhibit H).  In addition to Scott Univer and Fred Goldberg, the list revealed that a number of individuals who testified for the government in the grand jury also provided testimony and/or sworn statements in the BDO civil matter in 2010 and 2011.

On September 26, 2013, Mr. Field issued a trial subpoena to DLA, counsel for BDO, seeking any and all communications between DLA and the government concerning the depositions and sworn statements provided in BDO's lawsuit against Morgan Lewis.   A copy of the subpoena is attached hereto as Exhibit I.  In response to the trial subpoena, on October 3, 2013, DLA provided e-mail communications between Ms. Erbsen of DLA and the government attorneys handling the trial of this matter.  Those e-mail communications reveal the following:

1.  On February 17, 2010, Diana Erbsen of DLA sent to Ms. Davis and AUSA Stanley Okula "recent filings and correspondence in connection with BDO's suit against MLB."  (Exhibit J).

2.  On March 26, 2010, Ms. Erbsen sent to Ms Davis a copy of the papers filed in court by BDO in opposition to Morgan Lewis & Bockius's motion for Rule 11 sanctions. (Exhibit K).

3.  On June 23, 2010, Ms. Erbsen provided to both Ms. Davis and Mr. Okula "discovery served on BDO by Morgan Lewis" in which Morgan Lewis requested "All documents relating in any way to any grand jury proceedings that [BDO has] had any participation in, involvement in or knowledge of" and "All facts and documents regarding any civil or criminal proceedings relating in any way, directly or indirectly,

---

[2]      It was not until after the September 18, 2013, colloquy referenced above, and after Mr. Field produced the materials to the government, that the government produced Mr. Univer's September 2011 deposition transcript and February 2010 declaration as 3500 material.  (See Exhibit F).  To date, the government has not produced Fred Goldberg's deposition transcript as 3500 material.

Hon. William H. Pauley III
October 6, 2013
Re: *U.S.* v. *Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

to [BDO's] Tax Shelter Products." In her e-mail, Ms. Erbsen also informed government counsel, "*Please be aware that I have been told that the letter you sent did not come to the Court's attention until the recent Hearing on the Motion to Disqualify because it was not e-filed.*" (Exhibit L). (emphasis added).[3]

4. In e-mails dated July 23, 2010 and September 8, 2010, Ms. Erbsen provided further updates to the government concerning the civil litigation. (Exhibit M).

5. On February 7, 2011, Ms. Erbsen informed AUSAs Davis and Okula of the list of individuals identified by Morgan Lewis for deposition, which included Scott Univer. (Exhibit N).

6. On July 28, 2011, Fred Goldberg was deposed in the civil matter. Benjamin Boyd appeared at the deposition on behalf of DLA. (Cover and appearance sheets of Goldberg deposition attached as Exhibit O).

   a. We obtained Fred Goldberg's deposition transcript on September 25, 2013, through the issuance of a trial subpoena to BDO. In his deposition, Mr. Goldberg, who is a partner at Skadden, testified principally about his work on the review of BDO's Tax Solutions Group's procedures and processes, his meetings with people from BDO, the edits made to the Skadden memo, and his communications with Scott Univer and others at BDO, including Charlie Bee and Denis Field.

7. On September 19, 2011, Scott Univer was deposed in the civil matter. Andrew Gifford appeared at the deposition on behalf of DLA. (Cover and appearance sheets of Univer deposition attached as Exhibit P).

8. On October 26, 2011, Ms. Erbsen notified AUSA Davis of the status of the civil litigation, informing her that "Fact discovery closed on October 3rd." At the end of her e-mail, Ms. Erbsen wrote, "Please let us know if you need any additional information." (Exhibit Q).

9. On October 26, 2011, Ms. Davis responded to Ms. Erbsen's e-mail thanking her for the information. (Exhibit R).

---

[3] A review of the docket sheet in *BDO v. Morgan Lewis & Bockius*, Civil Action No. 9640-09M indicates that on March 26, 2010, both BDO and Morgan Lewis filed opposition papers to an application for a "stay pending criminal proceedings." Since both of the parties to the litigation opposed the stay, it appears that the government sought the stay. On October 4, 2013, we asked government counsel to provide us with any correspondence it submitted in connection with the civil matter; to date, we have not received a response to our request. The clerk of the court has advised us that non-parties are unable to access any documents filed in the civil action.

Hon. William H. Pauley III
October 6, 2013
Re: *U.S. v. Daugerdas, et al.*, S6 09 Cr. 581 (WHP)

As we have previously advised the Court, all BDO-related subpoenas issued in this matter are directed to Ms. Erbsen's attention at DLA. In her cover letters responding to subpoenas issued to BDO, Ms. Erbsen's practice has been and continues to be to copy AUSA Davis. (See examples attached as Exhibit S).

We submit that, in light of:

- BDO's continuing obligation to the government under the Deferred Prosecution Agreement;
- the communications outlined above which Ms. Erbsen of DLA apprised Ms. Davis of the status of the litigation between BDO and Morgan Lewis;
- the fact that the government attempted to stay the civil proceeding;
- the fact that the government was aware that Mr. Univer had intervened in the civil proceeding and had in its possession since at least February 2011 his sworn declaration in connection with that matter;
- the fact that the government was aware since at least February 2011 that depositions were being taken of Scott Univer and other grand jury witnesses,

it is implausible that the government was unaware of the fact that both Scott Univer and Fred Goldberg – trial witnesses with crucial information about the Skadden memo, a central piece of the government's proof against Denis Field – had been deposed on the very subjects as to which they testified in the first trial and about which they will be asked to testify again in this re-trial.

B. **Discussion**

The Jencks Act, which is codified at Title 18, United States Code, Section 3500, requires the government to "produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." If the government elects not to comply with its disclosure obligations, "the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial is declared." 18 U.S.C. Section 3500(d). While the Jencks Act requires the government to produce statements of its witness after the witness has testified, the government in this case committed to producing such statements to the defense by July 26, 2013 -- well in advance of the trial of this matter -- and therefore should be penalized for deliberately violating that commitment.

Courts have held that where the government's Jencks Act violation is "inadvertent", its "failure to disclose may be disregarded if there is no reasonable probability that had the evidence been disclosed, the result would have been different." See, e.g., *United States v. Jackson*, 345 F.3d 59, 77 (2d Cir. 2003); *United States v. Gonzalez*, 110 F.3d 936, 943 (2d Cir. 1997). Where, however, the government's failure to disclose is deliberate, the legal standard to be applied is

Hon. William H. Pauley III
October 6, 2013
Re: *U.S.* v. *Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

less demanding.  As the Second Circuit stated long ago in *United States v. Hilton*, 521 F.2d 164 (2d Cir. 1975), "If the government deliberately suppresses evidence *or ignores evidence of such high value that it could not have escaped its attention,* a new trial is warranted if the evidence is merely material or favorable to the defense." *See also Jackson*, 345 F.3d at 77 at n. 14 (citing *Hilton*).   Unlike the situations in *United States v. Cain*, 2006 WL 2864017 (W.D.N.Y. Oct. 4, 2006) and *United States v. McKoy,* 78 F.3d 446 (9th Cir. 1996), where Jencks Act violations were found to be inadvertent, the facts in this case clearly support a finding of the government's deliberate disregard of its disclosure obligations.

There is no excuse for the government's violations in this case.  The government is of the view, as expressed to this Court on September 18, 2013, that it does not have an obligation to "go out and acquire 3500 material".   (Exhibit E, Tr. at 1355).  The government's position is particularly troubling in this case because it has been in constant contact with DLA, counsel to BDO, who was present at each deposition at issue.   As is evidenced by the e-mail communications recently produced by DLA, it has kept the government apprised of the status of the civil matter, which the government apparently sought to stay in light of this on-going criminal case.  If the Court accepts the government's representation that it was not "in possession" of the deposition transcripts, the only rational conclusion is that the government deliberately refrained from *physically* obtaining those transcripts in order to avoid producing them to the defendants.  Such gamesmanship should not go unchecked.

Furthermore, the government's violations are particularly egregious in this case because, as this Court is well aware, we are now about to begin week five of this lengthy re-trial, which involves over 30 government witnesses.  Defense counsel—who have been appointed by the Court to represent Mr. Field -- have been preparing a defense for many months and relied on the government's commitment to comply with its Jencks Act obligations and provide us with all prior relevant statements of its witnesses by July 26, 2013.  It was by chance that Mr. Field, just days before this trial began, learned of Scott Univer's testimony and sworn declaration, which then led to the discovery of Fred Goldberg's testimony.   We have grave concerns that, given the government's blatant disregard of its disclosure obligations, and its failure candidly to apprise the Court of its real-time knowledge of the on-going civil matter in which two of its trial witnesses and some of its grand jury witnesses testified, there may be other relevant statements of the government's witnesses of which we are unaware.  Unfortunately, given government counsel's conduct in this case, it is impossible for us to trust their pat representations about compliance with disclosure obligations.  Mr. Field frankly has run out of time to try to track down statements of other government witnesses.  It is unfair for the government to pass that burden onto him.

The government's deliberate Jencks Act violations must be addressed by precluding the government from calling Scott Univer and Fred Goldberg as trial witnesses.  Just as the 4th

Hon. William H. Pauley III
October 6, 2013
Re:  *U.S. v. Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

Amendment's exclusionary rule exists to inhibit government misconduct, we submit that absent preclusion of these witnesses, the government will continue to ignore its disclosure obligations – in this case and in others -- with no concern about any adverse consequences. *See, e.g., United States v. Calandra,* 414 U.S. 338, 347 (1974) (exclusionary rule deters law enforcement misconduct by barring the use of illegally obtained evidence).

## Conclusion

We submit that the government's clear violations of the Jencks Act in deliberately failing to obtain and provide to the defense the sworn testimony and statements of Scott Univer and Fred Goldberg – which statements were made in February 2010 and July and September 2011 -- by the date on which 3500 material was to be supplied to the defense, requires that the Court preclude the government from calling either Scott Univer or Fred Goldberg as witnesses in the trial of this matter.

Respectfully submitted,

Sharon L. McCarthy

César de Castro, Esq.
The Law Firm of César de Castro
The Trump Building
40 Wall Street, 28th Floor
New York, New York 10005

*Attorneys for Denis Field*

cc:     All Counsel of Record
        (by e-mail)